The next case is Continental Holdings v. HPLGP, LLC. Steven Busey is here for the appellant, Continental. Steven Giesler is here for the appellees. And, Mr. Busey, you may begin when you're ready. May it please the Court, I'm Steve Busey, Counselor for the Appellant, Continental Holdings. The panel asked the parties last week in a letter to address, re-address the jurisdictional issue. And in a question that was fairly focused in the letter that was put to us on August 14th. And it asked about who needs to sign that stipulation under 41A-2A, 41A-2A-2. And the question is where it says that stipulation under those circumstances has to be signed by all parties who appeared. And it doesn't say appeared where or when or how. And that's the dilemma. And you've identified the National City case of the Fifth Circuit and the Hartnett case that this Court has decided. And the National City case said it had to be signed by the party who was being dismissed. And the Hartnett analysis suggests it needs to be signed by all parties who have appeared. The word case was used on the second page of that decision, all parties who have appeared in the case. And the issue arises because of the definition of action. What does the action mean? And I think you could argue this either way. I understand the issue. We offered last week to take it back down to the District Court and get a Rule 54A ruling. But we're going to address it here today. I think you can reconcile National City with Hartnett by saying that action means not the entire case. Because if you look in 41AE2, if you're going to have a dismissal by the court, it says you can dismiss the action and leave a counterclaim pending. There's a circumstance. So action doesn't necessarily mean the entire case. And so if you define action as being the action about a movement against the party being dismissed, that would be the action. And then the parties who appeared, that would be consistent with National City. It's just up to the court how you want to do that ruling. Let me ask you this question about it. And you can, so we're actually seeing this issue a lot in a lot of appeals that we have. And one of the things that I think, one of the reasons why we're here today is that we are seeing it in a lot of appeals. And the question I have for you is my practice didn't involve a lot of joint stipulations of dismissal. But is this, is the practice, in this case it's kind of interesting because sometimes these joint stipulations of dismissal were signed by everybody and sometimes they were not. And I guess my question is just as a practitioner, what is the practice in this circuit for doing these joint stipulations of dismissal? In my experience, the practice is that the dismissal is signed by the parties that move it and the party being dismissed. And I think that you can see that what's happened if you look at the dismissals, which you all have identified, 179, 317, 379. And so I have previously considered the issue that you all have raised. But I think that's the way to reconcile those decisions. Because this case has gone on for eight years and it's had lots of parties and third party claims. And we're going to go back and have to get signatures of everybody who's appeared over eight years' period of time in this case on stipulations. So we kind of know who to leave the party to. It just doesn't seem to make sense. And I ask the court simply to consider Rule 1 of the Federal Rule of Civil Procedures, which asks that the rules be applied, construed and applied in a manner that just gets a speedy and inexpensive determination of the issues in the proceeding. And we just shouldn't have to go back through that again. And that's why I think National City makes a lot of sense. But here, isn't it true that some parties specifically refused to stipulate? Well, we have the issue of the merits of Houston. Houston had police who did not want to stipulate unless it was with prejudice. Right. So doesn't that suggest that there may be some independent value? I understand that the point that you raise about complicated litigation that takes years is a very valid, practical one. But isn't there perhaps some value in ensuring that no party is prejudiced in some way by actually requiring all parties to sign? All parties have been dismissed years ago. That doesn't seem to make sense. Well, they haven't been dismissed. I mean, if that's the... Well, they haven't. I mean... I bet they'd be surprised by that, right, to find out. Mr. Chairman, if I may, the merits of the case. We had a situation where we asked the District Court in 2015, in November of 2015, to voluntarily dismiss Continental's third party claims against the Houston defendants. And they objected because they wanted to dismiss with prejudice and didn't want to do that. And the question is that we brought by this appeal to this Court was that denial of our motion to dismiss the third party claim of abuse of discretion. We think under the clear precedent of this Court and even pre-bonner decisions, we've got five of them that we've named in our brief, all requires a showing of plain legal prejudice. And there's been no showing of plain legal prejudice here as that term has repeatedly been defined by the Fifth Circuit, by the 11th Circuit, and even by Cone and the United States Supreme Court, which we cited in our brief. So it seems like the best argument from the other side on that is, you know, we had an interest in this case because one company was going to point the finger at us as being the successor who was actually responsible. And so we didn't want to just leave the case unless we were gone for good with prejudice dismissal. Why isn't that interest, it may not be, why isn't that sort of practical interest not good enough? Because if they were out of the case, they're not going to be bound by the result. That's the short answer to it. And we cited the decision, the Supreme Court's decision, which says it's very strange that the case, you know, out of the case, we have an admission of Houston's counsel in argument from the district court in 2015 that they recognize the law of collateral estoppel and that Houston would not be bound by the result once they left the litigation. And that we'd be merely paddling uphill. And paddling uphill doesn't mean, of course, that it's just plain legal prejudice. We've seen that even though we've cited cases where you're going to lose the statute of limitation defense, repeatedly the cases say that their additional litigation doesn't constitute plain legal prejudice. None of that constitutes plain legal prejudice. And in this case, they're not bound, so there's not going to be whatever result happens. So it would be no plain legal prejudice. Let me ask you this. Let's say they were never party to the case. And they found out about the case. And they moved to intervene on the case and said, look, we want to intervene because this other company is pointing the finger at us and we want to be involved in this case to kind of see what happens and make sure we don't somehow get tagged with something based on how this case proceeds. Would they be able to intervene on that theory? I haven't said that they are. I haven't talked about it. But the rule of intervention is where the showman is required to intervene. Okay. I forget all about that. And the additional issue we've raised in our brief. And once the District Court abuses discretion in denying our 2015 motion to dismiss, everything after that, we've cited the case United States versus $70,000 in our brief. After that, everything in the case is a nullity and it is as if the parties had never been brought. And that's why the subsequent orders and judgments should be dismissed or should be reversed. And we've asked with our relief that we've specified our conclusion in our initial brief that's very specific. Thank you, Your Honor. All right. Thank you, Mr. Busey. Mr. Giesler. Good morning. I'm pleased to report Steve Giesler, part of the local class, Thompson and Angelos for the FLE's Houston Pipeline Company and HPLGP. As Mr. Busey did, with the court's permission, I'll address the jurisdictional issue first. And I'll begin by noting that perhaps not unique, but we're in a rare position of, as the FLE, still desiring this court to have jurisdiction because we've got this judgment out there for a million and a half dollars that stayed pending the conclusion of appellate review. But as often the case in this job and in life, I suppose there seems to be a divergence of what I want to have happen and what I think probably should happen. And in that regard, I think that it's probably the better call or the sounder approach to suggest that this court does not have jurisdiction over the appeal based on the authorities pointed out in the court's letter from last week. So I think that there's absolutely a distinction made between action and claim here. And that 41, the subsection 2, what we're dealing with here, contemplates the dismissal of an entire action. And that, read in pari materia with the other portions, not just of Rule 41, but of other portions of the rules of civil procedure, you look at 41B, where there's a clear distinction made in the same sentence between the term action and the term claim or counterclaim, and also in 54B as well. I think that what we're looking at here is that if there's a stipulation that does not dismiss an entire action, that it's not something that meets the requirements of A2. And in that regard, I think that there's no way to reconcile the Sixth Circuit opinion, which is published, the Harding opinion here, which was not published, with the Fifth Circuit's opinion. They suggest that they have the sounder approach. They cite 109 federal practice as a sort of treatise on the issue. But as this Court pointed out, the rule says what it says, and it's that the stipulation has to be signed by everybody who is a party to the case. Now, the Sixth Circuit case, which is cited in the Court's memorandum letter from last week, gets into the issue. The parties in that case argued precisely what has sort of been argued implicitly here, which is that the parties who have been dismissed are not really parties to the case, or the parties that have been putatively dismissed are not parties to the case whose signatures are required. And the Sixth Circuit, both textually and as a matter of policy, suggests why that's the wrong reading. The first is that— Can I ask you a question, just two practical questions? One practical question, which is something that Judge Grant raised. Like, why would a party that's not being the party who's dismissed—you know, it's a case, a lawsuit between three different people, and one of them's going to be dismissed, the other one's not. Why would they want to be involved in signing the stipulation or not? Could you address that at all? The Sixth Circuit addressed it, and I think it's actually a valid rationale, is that for purposes of finality for an appeal, that they would need to know whether or not all cases or all claims or parts of the action have been dismissed, so that if they're sitting out here waiting for a final decision that is appealable, that they would be privy to whether or not that had finally been accomplished. And that's the rationale offered by the Sixth Circuit. The second question I have is the same question I ask opposing counsel, which is—and I don't know what your practice is exactly, but it was interesting to me that some of these stipulations were signed by everybody and some of them weren't. And I was just—do you have any feel for what the practice is, like what people are actually doing on this? It appears that it varies. And I would note that even in—and I think it's in 185—Document 185, which was signed, that it wasn't—that that stipulation was not signed as parties. It was the parties to the—the party who was doing the dismissing and the parties who were subject to the dismissal who were being dismissed. They signed it as parties, and then the remainder of the parties who signed, which weren't—which were not everybody, it says seen and agreed. And they sort of said, OK, yeah, we're fine here. So it wasn't as if—so that was the practice. That seems to be the practice in these types of situations is that everyone who's made an appearance, if they're going to sign it, it's just sort of an acknowledgment that they've seen it, not obviously that they've been parties to it. And as I said earlier, I would suggest that that is not congruent or not consonant with the text and the purpose of the rule, which is if you're going to stipulate dismissal, then everybody that will leave no more judicial labor, we're going to stipulate it that everybody's out of the case and then it's on—then the court has been divested of jurisdiction. Here's another practical question. I would say there are probably three reasons that a party wouldn't sign a dismissal. One, they think that in some way they would be prejudiced by it, right? And that's one kind of protective factor of this proposed rule. The other reason is that they have some sort of inappropriate animus toward other parties in the litigation. And then the third would be that they somehow have disappeared or can't be found. Now, that third one is probably unlikely where you have a large set of corporate defendants. In other cases, it may be less likely. And I won't speculate about whether animus is likely or unlikely with a set of corporate defendants. But how do you think practically within the rules, if we have the ruling that you needed all the signatures, how do you think you'd deal with those latter two possibilities? Go to the court, which is—that would not be the answer. Explain that to the court. Explain the animus. Explain the absence if somebody's died or if it's an individual or if there's no successor. Explain it to the court and get the court order would be the result. One other thing I'd like to note is that I believe that two of the three cited potential faulty stipulations. And I believe they're numbers 185 and 317. Those dismissals were without prejudice. And so just a matter of this court's jurisdiction and not to get down the hole of finality trap and all of its attendant cousins' jurisprudence. I think on its own, the fact that those parties were dismissed without jurisdiction and there was never any court order finalizing or sort of, I guess, remedying those issues later, I think that in and of itself is sufficient to divest this court of jurisdiction or to say that the jurisdiction never invested in the court at all. And that's something that was not addressed in the response to the formal jurisdictional question that was issued last year. I think the analogy or metaphor that I've used here in discussing this with counsel is that the response to the jurisdictional questions have sort of always been fighting the last battle. So they've been answered in light of the reasons why there have been dismissals, you know, as premature appeals in the past. And therefore, there hasn't been a holistic review or answer as to whether or not this court. And so I think that that in and of itself would be, even if we don't ever get to the issue, if we didn't have to, of the stipulations where they signed by everybody would be sufficient to find that there's no jurisdiction. Turning to the merits of the case, there is a distinguishing factor in virtually all of the cases that have been cited by either party with regard to whether or not a voluntary dismissal was or was not properly granted. And it's the issue of whether or not the voluntary dismissal was made in bad faith or was suggested in bad faith. This goes all the way back to sort of the seminal or foundational case here, which is the Durham case of 1967. And in that opinion, this court uses the exact words. It said, look, we don't know why exactly the plaintiff in this case did not do what he was supposed to have done. And the facts of that case that the court is aware of is there was an adverse evidentiary ruling on the eve of a trial. And the plaintiff said, all right, in light of that, I'm going to move for voluntary dismissal. And the trial court there said, we're working remotely. This is 60 years ago. They were operating in Fort Pierce, Florida, which was hundreds of miles from where the parties were and witnesses. I'm not going to inconvenience everybody by granting this dismissal and making everybody go through this again. And on appeal, this court said, that's not the proper analysis. You need to look at what is actually, was there any substantive legal prejudice to the defendant. In doing so, subsumed within that analysis is whether or not the voluntary dismissal was being moved for in bad faith. And the court there said no. And that element of the analysis of the weighing of equities between the parties as to whether or not the voluntary dismissal would result in substantive prejudice to the defendant has carried through to this day. And I would note for the court, really in virtually every case that's cited on these issues. In the Dobbs case, which is unpublished, it's the most recent one from 2022. In Arias, which is a case where the voluntary dismissal was granted or should have been granted as well. At 1272, the court plainly says that this court says that the equities inquiry between the parties includes a determination of whether there's bad faith on behalf of the plaintiff in moving for voluntary dismissal. And in that case, there was none. So I'm interested to hear you talk about Durham. I agree that it, should we get to the merits, is the most relevant case. But I don't, correct me if I'm wrong, I don't think you all really engaged with that case in your briefing. Did I miss something? We did. It's referenced as the seminal case in the accounts briefing. And the reason it's not engaged in there, it's not engaged with, is I would disagree that it is the most relevant case. It's certainly the case that sort of kicked off this court's precedent. But that is, the rule that was announced in Durham has been refined and elucidated numerous times since then. I would point probably to McCants, which is from 1986, as the sort of modern foundational precedent. And McCants cites Durham itself, but also cites the idea that this bad faith inquiry is necessary as a determination into whether or not there's going to be any prejudice, or whether the equities between the parties suggest that a voluntary dismissal should or should not have been granted. In Durham, the reason Durham is not as relevant to this case is there was no suggestion of prejudice to the defendant in that case. The prejudice in that case, or the reason that the trial court, the district court, refused or denied the motion to this voluntary dismiss in that case, was because the court itself and the witnesses were going to be inconvenienced solely as a matter of practicality by having to go through the case again. We're going to have to bring these witnesses who have traveled 300 miles or 400 miles or however far it was from where the action had sort of accrued to this visiting. I think the court said during the summer it went to Fort Pierce, which is where I'm from, by the way. And so for that reason, and not for any substantive prejudice to the defendant, that that was the reason why the motion should have been denied. And this court correctly said, well, that's not the rule. The issue is whether or not there's any substantive prejudice to the defendant, not to the court, not to the judge, or not to the witnesses. When was the evidence of bad faith established in this record? Wasn't it after the court made a decision on the voluntary dismissal? It was suggested at the very, now, discovery had not been completed yet, and some of the depositions and some of the discovery that had been, that nailed down and absolutely the two successive judges looked and said that this was a prototypical example of bad faith, that the case was frivolous when it was brought, and hence the sanctions. But at the time that the motion for voluntary dismissal was made, the response, and this is reflected both in the written response and the transcript, was we know what they're trying to do here. They're going to get us out of this case. They're then going to argue to this empty chair, to the court, that this empty chair is the party that's really, that is actually at fault here. So the court, this is not a post hoc rationalization for why there was a showing of bad faith. This was made in advance. The court was aware that Hughes' position was that this was something that was brought in bad faith, that the court needed to be aware that prospectively Continental was aware of what they were doing. And it is true that the, without a doubt, the subsequent course of proceedings bore that out. This was not somebody, you know, having a 19 and blackjack, hitting on two and saying it was the right decision. Prospectively, Houston was aware of what was going on, apprised the court of that, and that was the basis. That was the stated basis in the decision, in the order denying the motion. Could you address, so the other side says, well, I think they say something like this, which is, okay, we see that you had an interest in staying in the case. You didn't want the empty chair argument. You know, you didn't want them pointing the finger at you, and you're not even around to defend yourself. But that's not a legal interest because this judgment wouldn't affect you anyway, because you were going to be dismissed without prejudice and, like, this isn't going to bind you in any way. So what does that matter? What do you say about that? So there's a discussion of this in the, there's about a four-page discussion of this in the transcript, where Judge Adams says, well, I'm having a hard time seeing the prejudice here. And Houston's counsel at the time explains what that prejudice would be. Earlier in the, at the hearing, Judge Adams mentioned, hey, I think this is going to be something that's going to require 500 pages of jury instructions. And so the counsel used that and said, okay, Judge, this is, we're either going to be brought back in this case or we're going to be in a subsequent waste case. This is going to be before you, likely, obviously, but it's the same case. And we're now going to have to paddle uphill after this 500 pages of jury instructions that are going to be predicated on the idea that Houston was the liable party. We'll have no ability to refute that. And then we're supposed to just wipe the slate clean and you're supposed to just be tabula rasa and say, okay, I'm going to ignore all of that and let Houston make its case on America. Here's what's kind of odd. It's not odd to me, but it's just you wanted to be in the case, right? I mean, that's the thing. You wanted to be in the case. Yeah. And so when I ask the question, like, do you think, had you been dismissed, you could have intervened? I don't know the answer to that. I don't know whether it was contemplated at the time. It obviously, as a practical matter, it didn't have to be because we were brought in against our will initially by virtue of the third party claim. But I don't know the answer to whether intervention, if we would have met the requirements for intervention in this instance. All right. My time has concluded. Thank you very much. Thank you, counsel. Mr. Busey, you've reserved some time for rebuttal. Yes, Your Honor. Thank you. The answer to the court's question, there was no evidence in the record of bad faith prior to our initial motion to dismiss in November of 2015. It was a year later, in 2016, that Cushing filed a notice of parole letter. And in response to that notice, the continuation of this litigation was bad faith, that Continental filed its second motion for voluntary dismissal, which was also denied. But the fact of the matter was, Continental, as early as November of 2015, eight years ago, wanted Houston out of this litigation, did not want to be in litigation with Houston, did not want to have the expense of that litigation, and voluntarily dismissed all of its claims, or tried to voluntarily dismiss all of its claims against Houston. And it was abuse of discretion to deny it. And it's totally unfair for the district court to subsequently impose $1.5 million in sanctions on Continental when it tried to dismiss this eight years ago. The expense that Houston incurred in the defense of this litigation was simply self-inflicted. And there is binding precedent saying that that motion should have been granted in 2015. There is no showing in the record of substantial legal prejudice to Houston. And as a result, the oral court's order to deny our motion to voluntarily dismiss should be denied. All right. Thank you, counsel. The court will be in recess for 15 minutes. All rise.